## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

| | | |
|---|---|---|
| **BRENDA L. WILLS,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:12-05270** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| Defendant. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered September 10, 2012 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 11.)

The Plaintiff, Brenda L. Wills (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on October 23, 2009 (protective filing date), alleging disability as of July 30, 2009, due to gastroparesis, chronic back pain, gastroesophageal reflux disease ("GERD"), hypertension, irritable bowel syndrome, anxiety, and depression.[1] (Tr. at 12, 136-40, 141-47, 388, 393.) The claims were denied initially and upon reconsideration. (Tr. at 65-67, 76-78, 79-81.) On March 25, 2010, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 82-83.) A

---

[1] On her form Disability Report - Appeal, Claimant alleged nerve damage of the right elbow and wrist, a knot on the right shoulder, chronic back pain, and breathing problems, as additional disabling impairments. (Tr. at 200.)

hearing was held on March 10, 2011, before the Honorable John W. Rolph. (Tr. at 33-60.) By decision dated April 14, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-27.) The ALJ's decision became the final decision of the Commissioner on July 12, 2012, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on September 10, 2012, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

2

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the

>    degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>    (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, July 30, 2009. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "gastroparesis, irritable bowel syndrome, and gastroesophageal reflux disease; cervical, thoracic and lumbar degenerative disc disease and strain with chronic pain; obesity; major depressive disorder; and anxiety," which were severe impairments. (Tr. at 14-15, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she may only occasionally climb ramps and stairs, bend, balance, stoop, kneel and crouch, but may never climb ladders, ropes and scaffolds, or crawl. She must avoid concentrated exposure to extreme cold, vibration, and hazards such as moving machinery and heights. She is fully capable of learning, understanding, and remembering simple to moderately complex work tasks that are performed in a low stress work environment, defined as one in which there is no production pace, no strict quota requirements, no strict time

>    standards, and no "over the shoulder" supervision. She may have occasional contact
>    with supervisors, co-workers and the public.

(Tr. at 17, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a file clerk, mail room clerk, and a cleaner, at the light level of exertion. (Tr. at 26, Finding No. 10.) On this basis, benefits were denied. (Tr. at 27, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

>    evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 16, 1957, and was 53 years old at the time of the

administrative hearing, March 10, 2011. (Tr. at 38, 136, 141.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 26, 39, 392, 399.) In the past, she worked as a social worker. (Tr. at 25, 39-40, 393-95, 401-08.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and summarizes it herein in relation to Claimant's arguments. Claimant's argument focuses on her mental impairments, and therefore, the undersigned has limited the summary of the evidence essentially to the evidence pertaining to Claimant's mental impairments.

*Access Health - Treatment Notes*:

Claimant treated at Access Health from July 18, 2008, through January 4, 2010, for her physical and mental impairments. (Tr. at 511-91, 719-73, 811-62.) On July 18 and August 18, 2008, Dr. Ida Villanueva, M.D., noted that Claimant's judgment and insight were intact and that she was fully oriented. (Tr. at 561-63, 565-69.) Dr. Villanueva assessed that Claimant's major depression was stable. (Id.) On January 12, 2009, Claimant's primary care physician, Dr. Amy Brown, D.O., noted that Claimant had no depression, anxiety, or agitation. (Tr. at 543-47, 759-63.) On January 26, 2009, Dr. Brown noted that Claimant's judgment and insight were intact. (Tr. at 540-42, 756-58.) Dr. Kimberly D. Ballard, D.O., noted on June 18, 2009, Claimant's reports of anxiety, depression, stress at work, and forgetfulness. (Tr. at 527-29, 743-45.) On mental status exam, Dr. Ballard noted that Claimant presented with a depressed mood but was oriented to time, place, and person. (Id.) She diagnosed major depression, increased her Celexa, and recommended that Claimant consider counseling. (Id.) Dr. Brown noted on June 23, 2009, that Claimant continued to complain of depression, stress at work, and that co-workers were picking on her. (Tr. at 524-26, 740-42.) Dr. Brown assessed major depression, as deteriorated, and prescribed Klonopin for anxiety. (Id.)

On July 24, 2009, Dr. Brown noted intact judgment and insight, a depressed mood, and Claimant's reports that she was stressed at work. (Tr. at 518-20, 734-36.) Dr. Brown assessed major depression, deteriorated. (Id.) On October 30, 2009, Claimant reported that she was unable to work due to pain and nausea. (Tr. at 511-14, 722-30.) Dr. Brown noted that Claimant had a depressed mood, but that her depression was stable. (Id.) She also noted that Claimant was filing an application for disability benefits. (Id.) Dr. Tiffany K. Thymius, D.O., noted on January 4, 2010, Claimant's request to increase her Klonopin due to increased anxiety. (Tr. at 719-22.) Dr. Thymius increased her Celexa and Mevacor. (Tr. at 721.)

### *Dr. Frank Roman, Ed.D. - Psychiatric Review Technique*:

Dr. Roman completed a form Psychiatric Review Technique on December 8, 2009, on which he opined that Claimant's depressive syndrome was not a severe impairment. (Tr. at 497-510.) He opined that her depression resulted in only mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. at 507.) In rendering his opinion, Dr. Roman reviewed Dr. Brown's mental status evaluation of October 30, 2009. (Tr. at 509.) He noted Claimant's activities to have included caring for her cats with the assistance of her parents, preparing meals for herself, taking care of money, reading, watching television, listening to music, grocery shopping, and going out to eat with her parents. (Id.) Dr. Roman noted that Claimant reported that she could get along with others and authority figures, that she could follow written and spoken instructions, that she could not handle stress well, that it took her a little bit to adjust to changes in routine, and that she had no problems paying attention. (Id.)

### *Dr. Timothy Saar, Ph.D. - Psychiatric Review Technique*:

Dr. Saar completed a form Psychiatric Review Technique on February 12, 2010, on which

he opined that Claimant's depression and anxiety were non-severe impairments. (Tr. at 641-54.) He opined that her impairments resulted in no functional limitations. (Tr. at 651.) In reaching his opinions, Dr. Saar considered Dr. Brown's October 30, 2009, mental status evaluation. (Tr. at 653.) Dr. Saar noted Claimant's activities of daily living to have included performing her own personal care, eating out with her parents, shopping once or twice each week, driving, managing her finances, cooking one meal a day for herself, vacuuming, and doing the dishes. (Id.) Claimant indicated that she neither needed reminders when going places or for personal care and medications, nor needed anyone to accompany her places. (Id.)

### *Surayia T. Hasan, M.D. - Treatment Notes*:

On November 15, 2010, Claimant was seen by Dr. S. Hasan for a follow-up appointment with complaints that she was vomiting several times a day. (Tr. at 672-73.) Regarding her mental status, Dr. Hasan noted her reports that her depression and anxiety were about the same as before. (Tr. at 672.) On examination, Dr. Hasan observed that Claimant was anxious and that her judgment and memory were normal. (Tr. at 673.)

### *Syed M.Z.A. Siddiqi, M.D., P.C. - Treatment Notes*:

On July 2, 2010, Dr. Siddiqi opined that there may have been some emotional component to Claimant's symptoms of gastroparesis and IBS. (Tr. at 709.) He found on October 4, 2010, that she had intact judgment, memory, and orientation, and presented with a normal affect and mood. (Tr. at 711.)

### *M. Khalid Hasan, M.D., F.A.P.A. & Heather R. Booth, M.S.W., L.C.S.W. - Raleigh Psychiatric Services, Inc.*:

Claimant initially was seen on September 10, 2010, by Ms. Booth, and then presented for her first scheduled therapy session on October 25, 2010. (Tr. at 713-14.) Ms. Booth noted that Claimant was anxious, had a calm mood and affect, and had fair insight. (Tr. at 713.) They discussed

her feelings of inadequacy and identified her feelings of grief regarding her job and losing something important to her. (Id.) Claimant reported on November 19, 2010, that she had a bad day and they discussed medication management. (Id.) On December 10, 2011, Claimant reported that she was overly anxious and depressed and was overwhelmed by her surroundings. (Id.) Her mood and affect were calm and her insight was fair. (Id.) On December 28, 2010, Claimant reported feeling hurt, angry, and irritable. (Id.) Her mood and affect were anxious, and they worked on anger management skills and self-esteem building. (Id.) On January 28, 2011, Claimant reported frustrations with dealing with her physical impairments. (Id.)

Dr. M. Khalid Hasan, M.D., F.A.P.A., submitted a treatment summary to Claimant's attorney, dated February 16, 2011. (Tr. at 715.) Dr. Hasan noted that Claimant initially was seen in the office on May 10, 2010, upon referral from Dr. S. Hasan for depression and narcotic addiction. (Id.) On initial evaluation, Claimant reported that she had not used any narcotics since February 2010, and Dr. Hasan noted that she had not shown any signs of substance use. (Id.) Claimant reported a two-year history of depression that had worsened over the last year, primarily resulting from her physical health issues. (Id.) Claimant had shown some improvement with her mood, but continued to report anxiety symptoms and difficulty with her physical issues. (Id.) Dr. Hasan noted that he did not formally evaluate Claimant for any disability but felt that her physical issues exacerbated her psychiatric issues and that she was not a candidate for gainful employment. (Id.)

Dr. Hasan assessed that Claimant was markedly limited in her ability to deal with work stresses, function independently, behave in an emotionally stable manner, relate predictably in social situations, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and understand, remember, and carry out complex job instructions. (Tr. at 717-18.) He

also opined that Claimant was moderately limited in all remaining categories of functioning, including the ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, maintain personal appearance, and understand, remember, and carry out detailed and simple job instructions. (Id.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in according little weight to the opinion of Claimant's treating psychiatrist, Dr. M. Khalid Hasan. (Document No. 10 at 3-6.) Claimant contends that the ALJ failed to give specific reasons for rejecting Dr. Hasan's opinion and failed to apply the requisite factors in determining the weight to give Dr. Hasan's opinion. (<u>Id.</u> at 4.) She asserts that the record contained a treatment summary from Raleigh Psychiatric Services, which consisted of therapy sessions signed by Heather Booth, MSW, LCSW, which were based on the unreleased treatment records. (<u>Id.</u> at 4-5.) To the extent that the ALJ found this summary insufficient, Claimant contends that the ALJ had a duty to contact Dr. Hasan for additional information pursuant to 20 C.F.R. §§ 404.1512(e) and 416.912(e). (<u>Id.</u> at 5.) Claimant contends that the ALJ's failure to contact Dr. Hasan to clarify his treating relationship with her constituted error and requires remand. (<u>Id.</u> at 5-6.)

In response, the Commissioner asserts that Dr. Hasan's opinion was inconsistent with the evidence of record and that the ALJ was entitled to give the opinion little weight. (Document No. 11 at 11-14.) The Commissioner notes that Claimant consistently reported to her physicians that she was unable to work due to physical, not mental, problems. (<u>Id.</u> at 9.) Claimant underwent conservative mental treatment and required only medication-monitoring and therapy. (<u>Id.</u> at 10.) Mental status examinations revealed depression and anxiety, but intact judgment and insight, normal memory, and no suicidal or homicidal ideation. (<u>Id.</u>) Dr. Brown repeatedly opined that Claimant

11

could return to work and the state agency physicians, Drs. Roman and Saar, failed to find any severe mental impairment. (Id.) The Commissioner asserts that Dr. Hasan's opinions were conclusory but that the ALJ nevertheless largely accounted for Dr. Hasan's opinion regarding the complexity of work. (Id. at 11.) Contrary to Claimant's argument, the Commissioner further asserts that the Regulations require that the ALJ re-contact a treating physician only where the ALJ finds that the record is insufficient to make a finding as to whether the claimant is disabled. (Id. at 12.) The Commissioner contends that the ALJ found that the record was sufficient to make a decision and that there was no need to contact Dr. Hasan. (Id. at 13.)

Analysis.

Claimant alleges that the ALJ erred in failing to give controlling weight to her treating psychiatrist's opinion. (Document No. 10 at 3-6.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more

weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th

Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In the instant matter, the ALJ gave little weight to the findings and opinions of Dr. Hasan because the opinion was (1) conclusory and provided little explanation of the evidence relied on in its formulation; (2) the record was void of any actual treatment or progress notes from Dr. Hasan, only from her counselor, Ms. Booth; (3) Dr. Hasan relied quite heavily on Claimant's subjective report of symptoms and uncritically accepted as true Claimant's reports; and (4) Dr. Hasan's opinion was unsupported by the other substantial evidence of record. (Tr. at 25.)

As noted above, Dr. Hasan's opinion primarily consisted of a check-box assessment that indicated marked limitations in six functional areas and moderate limitations in the remaining nine functional areas. (Tr. at 25, 717-18.) Dr. Hasan did not provide any explanation for the assessed limitations on the form. (Id.) Dr. Hasan submitted a letter to Claimant's attorney contemporaneously with his assessment that indicated since Claimant's initial visit, she had five follow-up visits for medication management with her last having occurred on January 31, 2011. (Tr. at 25, 715.) Dr. Hasan noted that Claimant's mood had improved but she continued to report symptoms of anxiety and issues dealing with physical problems. (Id.) Dr. Hasan stated: "Although I have not formally evaluated her for any disability, I do feel that her physical issues exacerbate her psychiatric issues and she is not a candidate for gainful employment at this time." (Id.) As Dr. Hasan noted in his letter to Claimant's attorney, Claimant had five follow-up visits for medication management. (Tr. at 25, 715.) During those visits, however, Claimant was seen by her counselor, Ms. Booth, and not by Dr. Hasan. (Tr. at 22, 713-14.) The undersigned finds that given Dr. Hasan's limited contact with

Claimant and his failure to explain his opinion, the ALJ properly found that Dr. Hasan's opinions were conclusory.

The ALJ noted that the majority of Claimant's treatment for her mental issues was by her primary care physician, Dr. Brown. (Tr. at 22.) Claimant's treatment primarily was conservative in nature and consisted of medication monitoring and therapy. (Id.) Despite having had depression and anxiety, Claimant's mental status examinations consistently and essentially were normal with intact judgment and insight and normal memory. (Id.) Claimant's depression did not interfere with her ability to work and Dr. Brown repeatedly advised Claimant to work. (Id.) The state agency consultants failed to find any severe mental impairment. (Tr. at 24.) The undersigned finds that Dr. Hasan's opinion therefore, is not supported by the other substantial evidence of record.

Despite having given little weight to Dr. Hasan's opinion, the ALJ nevertheless accounted for some of his limitations in assessing his RFC. (Tr. at 17-26.) For instance, Dr. Hasan opined that Claimant was moderately limited in her ability to deal with the public, relate to co-workers, and interact with supervisors. (Tr. at 25, 717.) The ALJ found that Claimant should have only occasional contact with supervisors, co-workers, and the public. (Tr at 17.) Dr. Hasan also opined that Claimant was moderately limited in her ability to deal with work stresses. (Tr. at 25, 717.) The ALJ therefore, found that Claimant should perform tasks in a low stress work environment without a production pace, strict work quota requirements, strict time standards, or over the shoulder supervision. (Tr. at 17.) Finally, Dr. Hasan opined that Claimant was markedly limited in her ability to understand, remember, and carry out complex job instructions, and moderately limited in her ability to do the same regarding detailed and simple job instructions. (Tr. at 25, 717.) The ALJ therefore, found that Claimant was capable of learning simple to moderately complex work tasks. (Tr. at 17.) Thus, despite having given little weight to Dr. Hasan's opinion, the ALJ did accommodate some of his

limitations in his RFC assessment.

Claimant asserts that because the ALJ did not give controlling weight to Dr. Hasan's opinion, the ALJ was required to contact Dr. Hasan for clarification of his opinions and treating relationship. (Document No. 10 at 5-6.) Title 20, C.F.R. §§ 404.1512(e), 416.912(e) require the Social Security Administration ("SSA") to re-contact a medical source to obtain additional evidence or to seek clarification of evidence when the evidence received from that source "is inadequate for us to determine whether [the claimant is] disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e) (2011).[3] Specifically, additional evidence or clarification must be sought from the medical source "when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Id. Such additional evidence

---

[3] Title 20, C.F.R. § 404.1512(e) provides:

(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
    (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
    (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. §§ 404.1512(e), 416.912(e) (2011) (effective prior to Mar. 26, 2012); *See* 77 Fed. Reg. 10651-01; 20 C.F.R. §§ 404.1512(e), 416.912(e) (effective Mar. 26, 2012).

or clarification may be obtained by the SSA requesting copies of the medical sources' records, obtaining a new or more detailed report from the medical source, or contacting the medical source by telephone. Id. Social Security Ruling 96-5p recapitulates the requirements of § 404.1512(e), and directs the ALJ to "make every reasonable effort to recontact [medical] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear[.]"

In this case, the ALJ specifically stated that he "finds the evidence of record sufficient to make a decision in this case." (Tr. at 12.) As stated above, the record was sufficient for the ALJ to find in the first place that Dr. Hasan's opinions were not supported by the substantial evidence of record and in the second place that Claimant's mental impairments were not disabling. Accordingly, based on the foregoing, the undersigned finds that the ALJ's decision to give little weight to Dr. Hasan's opinion is supported by the substantial evidence of record. The undersigned further finds that the ALJ did not have a duty further to contact Dr. Hasan to clarify his opinions or the treatment relationship with Claimant.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then

fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 24, 2014.

                                      R. Clarke VanDervort
                                      United States Magistrate Judge